## Commonwealth vs. John R. Haskell, Jr.

Berkshire. November 7, 2002. - March 10, 2003.

Present: Marshall, C.J., Greaney, Cowin, Sosman, & Cordy, JJ.

*Practice, Criminal,* Motion for reconsideration. *Jurisdiction,* Reconsideration
of order or judgment. *Constitutional Law,* Investigatory stop, Reasonable
suspicion, Admissions and confessions, Self-incrimination.

A District Court judge did not abuse his discretion in allowing a criminal
defendant's motion to reconsider the judge's denial of the defendant's mo-
tion to suppress evidence and statements made to the police, despite a five-
year gap between the judge's initial ruling and his allowance of the motion
for reconsideration that was entirely due to the defendant's protracted
default. [792-793]
A police officer's investigatory stop of the defendant's motor vehicle was
constitutionally justified, where the police had received a report from an
identified citizen that he had seen the defendant loading a handgun shortly
before 2 a.m. in a high-crime area [793-794]; further, the precautions taken
by the investigating officers, including drawing their weapons, ordering the
defendant to get out of the vehicle, and conducting a protective search of
the interior of the vehicle that produced the handgun, were proportional to
the safety risks that they faced, and therefore did not transform the stop
into an arrest [794-795].
A suspect who had been subjected to a custodial interrogation when a police
officer asked him whether he had a license to carry firearms, without first
advising him of his Miranda rights, was entitled to suppression of his
answer where, although the police officer need not have administered
Miranda warnings before demanding that the suspect in custody produce
one of the documents listed in G. L. c. 140, § 129C (here, a firearms
license), the officer's asking the suspect whether he had such a document
constituted a request for a testimonial communication that entitled the
suspect to the protections of the Fifth Amendment to the United States
Constitution, including the right to refuse to answer. [795-797]

Complaint received and sworn to in the Pittsfield Division of
the District Court Department on October 7, 1994.

A motion to reconsider an order denying a motion to sup-
press evidence, filed on May 30, 2000, was heard by *Alfred A.
Barbalunga,* J.

An application for leave to prosecute an interlocutory appeal

was allowed by *Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Robert J. Carnes* for the defendant.

COWIN, J. In 1994, the defendant was charged with possessing a firearm without a license in violation of G. L. c. 269, § 10 (*a*). Later that same year, the defendant, alleging State and Federal constitutional violations, moved to suppress evidence and statements made to the police. A District Court judge denied the motion after a hearing. The defendant subsequently failed to appear for his trial, and his whereabouts remained unknown until May, 2000, when he removed his default and requested reconsideration of the denial of his 1994 suppression motion. The motion judge, without hearing further evidence, reversed his initial position and allowed the motion. The Commonwealth sought and was granted leave by a single justice of this court for an interlocutory appeal to the Appeals Court, and we transferred the case here on our own motion. We affirm the order of suppression with regard to the defendant's statement that he did not have a firearms license and otherwise reverse the order.

We recount the facts as originally found by the motion judge. Shortly before 2 A.M. on October 7, 1994, a bartender in a Pittsfield bar saw, through the bar's window, a man sitting in an automobile loading a handgun. The bar was located in an area of Pittsfield with a high level of criminal activity. The man drove away, and the bartender locked the bar's door to protect his patrons, dialed 911, and reported his observations and the direction in which the car was traveling. Less than one minute later, Officer Jeremy Barber of the Pittsfield police department, alerted by a radio call describing the automobile and the bartender's observations, spotted a matching vehicle driving in the indicated direction approximately 500 yards from the bar. Barber stopped the vehicle and got out of his cruiser. As he did, he saw the vehicle's lone occupant (later identified as the defendant) reach down toward the floor of the car. Barber

ordered the defendant to put both his hands out the window, and the defendant complied. A second officer, Richard Saldo, then arrived (the total number of officers present would eventually rise to six) and approached the car from the front while Barber approached from behind. Barber drew his service weapon; Saldo put his hand on his weapon, but did not draw it. Saldo asked the defendant if he had a gun, and the defendant said that he did. Saldo then asked where the gun was, and the defendant told him that it was under the seat. The police next ordered the defendant out of the car and pat frisked him, finding no weapons. While this was occurring Officer Barber saw "a pile of .45 caliber bullets on the front seat" and, after a search of the passenger compartment, retrieved a loaded .45 caliber revolver, a holster, and a large sheath knife from beneath the driver's seat. At this point, Lieutenant David Reilly (who had recently arrived) asked the defendant whether he had a permit to possess the revolver, and the defendant responded that he did not. The defendant was then arrested.

As a preliminary matter, the Commonwealth argues that the motion judge's allowance of the defendant's motion to reconsider was an abuse of his discretion. It was not. A judge may permit a motion that has been heard and denied to be renewed when "substantial justice requires." Mass. R. Crim. P. 13 (a) (5), 378 Mass. 871 (1979). Although renewal "is appropriate where new or additional grounds are alleged which could not reasonably have been known when the motion was originally filed," Reporters' Notes to Mass. R. Crim. P. 13, Mass. Ann. Laws, Rules of Criminal Procedure 132 (Lexis 1997), the remedy is not restricted to those circumstances. A judge's power to reconsider his own decisions during the pendency of a case is firmly rooted in the common law, and the adoption of rule 13 was not intended to disturb this authority. See *Commonwealth* v. *Cronk*, 396 Mass. 194, 196-197 (1985); *Commonwealth* v. *Downs*, 31 Mass. App. Ct. 467, 469 (1991) ("Judges are not condemned to abstain from entertaining second thoughts that may be better ones"). But see *Commonwealth* v. *Balboni*, 419 Mass. 42, 43-44 (1994) (postdisposition motion to reconsider must be filed within time allowed for appeal). Although the five-year gap between the judge's initial ruling

and his allowance of the defendant's motion for reconsideration was entirely due to the defendant's protracted default, it was within the judge's discretion to reconsider his ruling despite the passage of time.

We next address the substance of the judge's order. In the absence of a written decision explaining his reasons for allowing the defendant's motion on reconsideration, we are unable to determine the basis for his suppression order. The defendant argues before us that the physical evidence (the revolver, holster, ammunition, and knife), as well as the statements made to Officer Saldo before the defendant was ordered out of his vehicle, were the fruit of an illegal stop. He further argues that his statement that he did not have a license to possess the revolver found in his car, made to Lieutenant Reilly after the defendant had been ordered from his car, was obtained in violation of the requirements set forth in *Miranda* v. *Arizona*, 384 U.S. 436, 479 (1966). We address these claims as framed by the defendant, applying State and Federal constitutional principles to the facts found by the judge. See *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), *S.C.*, 398 Mass. 806 (1986).

The police did not overstep any constitutional limits when Barber stopped the defendant's vehicle. An investigatory stop of a motor vehicle is justified when the police have "a reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom," that a vehicle occupant "had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Alvarado*, 427 Mass. 277, 280-281 (1998), quoting *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268-269 (1996). See *Terry* v. *Ohio*, 392 U.S. 1 (1968). Because it is legal in Massachusetts to carry a handgun if properly licensed, a report that an individual possesses a handgun, without any additional information suggesting criminal activity, does not create a reasonable suspicion that a crime is or will be committed. See *Commonwealth* v. *Couture*, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990). Here, however, the police received a report that the defendant had been seen loading a handgun shortly before 2 A.M. in a high-crime area. The report was based on the personal observations of an identified citizen. See *Commonwealth* v. *Alvarado*, *supra* at 283. While a licensed gun

owner might well choose to carry a handgun for protection when venturing into a high-crime area in the early hours of the morning, the act of publicly loading a handgun is an event that creates a reasonable suspicion that a crime may be about to take place. "It would have been poor police work indeed" if Officer Barber had "failed to investigate this behavior further." *Terry* v. *Ohio, supra* at 23. The stop of the defendant's vehicle was therefore constitutionally justified. See *Commonwealth* v. *Moses,* 408 Mass. 136, 140 (1990); *Commonwealth* v. *Wren,* 391 Mass. 705, 707-708 (1984); *Commonwealth* v. *Matthews,* 355 Mass. 378, 381 (1969).

The defendant further argues that the precautions taken by the investigating officers converted the investigatory stop into a formal arrest for which the police lacked the necessary probable cause. We disagree. The Constitution does not require officers "to gamble with their personal safety," *Commonwealth* v. *Robbins,* 407 Mass. 147, 152 (1990), and police officers conducting a threshold inquiry may take reasonable precautions, including drawing their weapons, when the circumstances give rise to legitimate safety concerns. See *id.* at 151-152. The precautions taken by Officers Barber and Saldo were, at each stage of the investigatory stop, proportional to the safety risks that they faced, and therefore did not transform the stop into an arrest. See *Commonwealth* v. *Moses, supra* at 141, quoting *Commonwealth* v. *Borges,* 395 Mass. 788, 794 (1985) ("The degree of intrusiveness that is permitted is that which is 'proportional to the degree of suspicion that prompted the intrusion' "). In this case, the stop took place in the early morning hours after the police had received reliable information that the defendant was both armed and (in loading a weapon in public) behaving in a suspicious manner. In addition, Officer Barber had observed the defendant reach down with his right hand, as if reaching for an object. Any police officer in Barber's position would be justifiably concerned for his safety, and approaching with a drawn weapon was an appropriate precautionary response. See *Commonwealth* v. *Willis,* 415 Mass. 814, 821 (1993). The order to the defendant to get out of the vehicle and the protective search of the interior that produced the handgun were likewise justified. See *Commonwealth* v. *Stampley,* 437 Mass. 323, 325-

326 (2002); *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 664 (1999), *S.C.*, 432 Mass. 613 (2000); *Commonwealth* v. *Moses*, *supra* at 144.

We next address the Miranda issue. The defendant contends that, when the police asked whether he had a license for his handgun without first advising him of his Miranda rights, they conducted a custodial interrogation in violation of the Fifth Amendment to the United States Constitution. See *Dickerson* v. *United States*, 530 U.S. 428, 444 (2000); *Miranda* v. *Arizona*, *supra*. Miranda warnings are required whenever police interrogation occurs in a "custodial" setting. *Id.* at 444. A suspect is in custody when his freedom "is curtailed to a 'degree associated with formal arrest.' " *Commonwealth* v. *Morse*, 427 Mass. 117, 123 (1998), quoting *Berkemer* v. *McCarty*, 468 U.S. 420, 440 (1984).

The Commonwealth does not contest the defendant's contention that he was subjected to a custodial interrogation when Lieutenant Reilly asked whether the defendant had a license to carry firearms. We therefore assume, for the purposes of this decision, that a custodial interrogation occurred.[1] The Commonwealth instead argues that G. L. c. 140, § 129C, creates an exception to the Miranda rule and would permit the specific question posed to the defendant. It does not. General Laws c. 140, § 129C, requires, in pertinent part, that a person found with a firearm outside the limits of his own property or residence "shall on demand of a police officer . . . exhibit his license to carry firearms, or his firearm identification card or receipt for fee paid for such card, or . . . a valid hunting license." The statute makes no mention of the Miranda warnings, and, even if it did, the warnings may not be waived by statute. See *Dickerson* v. *United States*, *supra* at 444 ("*Miranda* announced a

---

[1] The fact that the stop, and the safety precautions taken to effect it, fell within the permissible limits of a *Terry* stop is not dispositive of whether the questioning was "custodial" for Miranda purposes. See *Terry* v. *Ohio*, 392 U.S. 1 (1968). Justifiable safety precautions, such as handcuffing a suspect and approaching with drawn weapons, may create a level of coercion equivalent to formal custody without transforming the *Terry* stop itself into an arrest. See *Commonwealth* v. *Gordon*, 47 Mass. App. Ct. 825, 827 (1999). Thus, our conclusion that the restraints imposed on the defendant were permissible as part of a *Terry* stop does not contradict our assumption that Lieutenant Reilly's question to the defendant constituted custodial interrogation.

constitutional rule that Congress may not supersede legislatively").

This is not to say that the police must administer Miranda warnings before demanding, pursuant to § 129C, that a suspect in custody produce a license to carry firearms. The Miranda warnings are designed to protect the integrity of a suspect's privilege against self-incrimination. See *Dickerson* v. *United States, supra* at 435; *Miranda* v. *Arizona, supra* at 439. Although this privilege protects a suspect's testimonial communications,[2] it does not permit a suspect to refuse to produce real or physical evidence (such as a license) when lawfully ordered to do so. See *Schmerber* v. *California*, 384 U.S. 757, 764 (1966) (no right to refuse to produce physical evidence under Fifth Amendment to United States Constitution). See also *Commonwealth* v. *Burgess*, 426 Mass. 206, 218 (1997) (no right to refuse to produce physical evidence under art. 12 of Massachusetts Declaration of Rights). It would serve no purpose to advise a suspect that he has a right to remain silent when the police are only demanding the production of physical evidence that the suspect may not withhold. The police, therefore, need not administer Miranda warnings before demanding that a suspect in custody produce one of the documents listed in § 129C.

The problem in this case, however, is one of form. Lieutenant Reilly did not order the defendant to produce or exhibit a license to possess the revolver found in his car; he asked the defendant whether he had such a license. As subtle as this distinction may seem, Lieutenant Reilly's question was an invitation to "relate a factual assertion or disclose information," *Doe* v. *United States*, 487 U.S. 201, 210 (1988), specifically, an admission that the defendant was in violation of G. L. c. 140, § 129C. It was therefore a request for a testimonial communication that entitled the defendant to the Fifth Amendment's protections, including

---

[2] A testimonial communication is one that, by itself, "explicitly or implicitly, relate[s] a factual assertion or disclose[s] information." *Doe* v. *United States*, 487 U.S. 201, 210 (1988). While a demand for the production of a license does compel the disclosure of the information contained on that license, "a person may not claim the [Fifth] Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." *Baltimore City Dep't of Social Servs.* v. *Bouknight*, 493 U.S. 549, 555 (1990).

the right to refuse to answer. *Id.* at 210-211. Given our assumption that the defendant was in custody for Miranda purposes when Lieutenant Reilly questioned him, and the fact that the defendant was not given the required warnings, the defendant's answer must therefore be suppressed. *Miranda* v. *Arizona, supra* at 476.[3]

The order of suppression is affirmed with regard to the defendant's statement regarding his lack of a firearms license and reversed as to all other matters. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[3]Although the Commonwealth did not argue the point before. us, we recognize that, in some situations that might be considered custodial for Miranda purposes, a demand that a suspect produce his firearms license would invite a suspect to reach into his pocket or glove compartment in the midst of a tense encounter. Such an act might well prove dangerous both to the police (if the suspect were carrying an as yet undiscovered weapon) and the suspect (if the police *believed* that the suspect was reaching for a weapon). Our holding today should not be read to require the police to administer Miranda warnings before asking preliminary questions reasonably designed to ensure the safe production of a suspect's license pursuant to G. L. c. 140, § 129C. See *New York* v. *Quarles,* 467 U.S. 649, 654-658 (1984); *Commonwealth* v. *Clark,* 432 Mass. 1, 13-14 (2000).