COMMONWEALTH VS. CHRISTIAN WHITE
(and four companion cases[1]).

No. 07-P-1815.

Suffolk. February 12, 2009. - June 1, 2009.

Present: McHugh, Mills, & Graham, JJ.

*Constitutional Law,* Search and seizure, Investigatory stop, Stop and frisk,
Voluntariness of statement. *Search and Seizure,* Reasonable suspicion,
Threshold police inquiry, Protective frisk. *Threshold Police Inquiry.*
*Evidence,* Voluntariness of statement.

A Superior Court judge erred in allowing the criminal defendants' motion to
suppress evidence obtained as a result of police officers' stop of their
vehicle, exit orders, and patfrisks, where the police acted with reasonable
suspicion upon the totality of the circumstances in stopping the vehicle
and, as a consequence, were authorized to conduct a threshold inquiry, to
order the suspects out of the vehicle, and to pat frisk them for weapons.
[345-346]

Assuming that the criminal defendant was in custody when a police officer
ordered her to get out of the vehicle she was driving and to place her
hands on the roof of the car, no interrogation took place when the officer
engaged her in a brief exchange, in that the officer's statement to her
advised her of a legal truth: that she was going to be frisked and could
elect to forgo that legal police action; moreover, even if the conversation
technically constituted a custodial interrogation, the officer acted properly,
given his concern for his safety and that of the other officers present.
[346-347]

INDICTMENTS found and returned in the Superior Court Depart-
ment on March 16, 2006.

Pretrial motions to suppress evidence were heard by *Frank
M. Gaziano,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Francis X. Spina,* J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was reported by
him to the Appeals Court.

[1]One against Christian White and three against Latoya Nunes.

*Helle Sachse*, Assistant District Attorney, for the Commonwealth.

*Robert A. O'Meara* for Christian White.

*John M. Goggins* for Latoya Nunes.

MILLS, J. This is the Commonwealth's appeal from the allowance of the motions to suppress filed by the defendants Christian White and Latoya Nunes. The weapons and ammunition charges are listed in the margin.[2] In their motions, both defendants claimed that the stop of their vehicle, exit orders, and patfrisks were unlawful. Nunes also claimed a Miranda violation. A Superior Court judge ultimately found that the stop of the defendants' vehicle was based upon a hunch, rather than reasonable suspicion, and ordered all evidence suppressed.[3] We reverse.

*Background.*[4] The judge's findings are essentially unchallenged, and we summarize. On February 2, 2006, Boston police were informed by a male victim that four black armed men had entered his apartment and beaten everyone, and that one assailant had thrown a pan of hot water on a female victim in the apartment. She was in shock, severely burned, and required immediate medical attention. Boston police Sergeant Detective O'Leary, the first to respond, was told by the male victim that he knew one of the assailants by name, and that the four men fled on foot. The male victim reported that one of the men wore a white bandana and that another wore a black shirt with writing on it, jeans, and black shoes or sneakers. The male victim reported that he was not able to describe the other individuals because they had forced him to keep his head down.

A few minutes later the male victim informed the detective

---

[2]White was charged with possession of a firearm, G. L. c. 269, § 10(*a*), as a second offense, G. L. c. 269, § 10(*d*), and as an armed career criminal, G. L. c. 269, § 10G; and with possession of ammunition without a firearm identification card, G. L. c. 269, § 10(*h*). Nunes was charged with possession of a firearm, G. L. c. 269, § 10(*a*); possession of ammunition without a firearm identification card, G. L. c. 269, § 10(*h*); and receiving a firearm with a defaced serial number, G. L. c. 269, § 11C.

[3]The judge, understandably, did not rule on Nunes's Miranda claim.

[4]"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002).

that the men had fled in a red car, which was not otherwise described. The vehicle description, and other information given by the male victim, was broadcast over the police radio. Officers Gunn and Fitzgerald were patrolling in a marked cruiser searching for suspects. Less than five minutes after hearing that the men had fled in a red car, the officers noted a red car, which they pursued. Officer Gunn observed that the car was occupied by three to four individuals, that the driver was a black female, and that she and the front passenger wore white cloths on their heads. Officer Fitzgerald reported seeing four black males. In fact, the female driver, the defendant Nunes, "was wearing a bulky, hooded winter jacket that concealed her features. She also wore her hair up, wrapped in some type of [white] cloth so that [her hair] length was not visible."

The officers pursued the red car for one to two blocks (in a direction toward, not away from, the crime scene), and activated blue lights to signal the car to pull over. The red car moved to the side of the road and stopped without delay. The officers did not observe anyone in the car attempt to discard anything or make any furtive gestures. Officer Fitzgerald approached the driver's side door and Officer Gunn the passenger side. Officer Gunn spoke with the occupant of the front passenger seat (Melvin Scott), and the person seated behind him (Ernest Jenkins). Due to the violent nature of the crime under investigation and the fact that all of the suspects were reported to be armed, Officer Gunn concentrated on watching Scott's and Jenkins's hands as they sat in the vehicle. "This became difficult as one of the men . . . failed to abide by Gunn's command to show his hands. Due to his reluctance and the nature of the investigation, the police officers decided to remove the occupants from the car and perform patfrisks for weapons."

Officer Fitzgerald obtained the car keys from Nunes in order to prevent her from driving away. Other officers arrived at the scene. On the driver's side, Officer Erving removed White from the rear passenger seat. He was handcuffed as a safety precaution and, when pat frisked, a pistol was found in his waistband. Officer Erving yelled out, "Gun! Gun!" to warn the other officers. Officer Fitzgerald ordered Nunes to get out of the driver's seat and place her hands on the roof of the car. He then retrieved a

weapon from her waistband. All four occupants of the car were arrested.

*Discussion.* a. *The vehicle stop.* "An investigatory stop of a motor vehicle is justified when the police have 'a reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom,' that a vehicle occupant 'had committed, was committing, or was about to commit a crime.' " *Commonwealth* v. *Haskell*, 438 Mass. 790, 793 (2003), quoting from *Commonwealth* v. *Alvarado*, 427 Mass. 277, 280-281 (1998). "The standard is objective and is satisfied when 'the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate.' *Commonwealth* v. *Mercado*, 422 Mass. [367,] 369 [1996], quoting from *Terry* v *Ohio*, 392 U.S. 1, (1968)." *Commonwealth* v. *Emuakpor*, 57 Mass. App. Ct. 192, 196-197 (2003).

Officers Gunn and Fitzgerald, who stopped the red car, acted on information provided by Detective O'Leary, which included information obtained from the male victim's initial call to the police, and his statements to Detective O'Leary at the scene. The officers were informed of the facts and location of an armed home invasion, and given a description of the suspects: four black men, armed, with one of the men wearing a white "do-rag,"[5] and one wearing a black shirt with writing on it, jeans, and black shoes. They also were informed that the suspects had fled in a red car. From this evidence it was more than "reasonable to infer that the source of the information was a firsthand witness to the event and not a casual rumor." *Commonwealth* v. *Ancrum*, 65 Mass. App. Ct. 647, 652 (2006). The radio calls heard by the officers reported a violent home invasion by armed assailants, and required immediate investigation. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 790 (1996); *Commonwealth* v. *Johnson*, 6 Mass. App. Ct. 944, 945-946 (1978).

We conclude that the police acted with reasonable suspicion upon the totality of the circumstances. See *Commonwealth* v. *Emuakpor*, 57 Mass. App. Ct. at 197. The stopped vehicle was a red car with four occupants, and while the driver actually was

[5]See *Commonwealth* v. *Ancrum*, 65 Mass. App. Ct. 647, 648 n.3 (2006).

female, she appeared to be a man. Both she and one of the passengers wore white head coverings. This case is similar to, but stronger than, *Commonwealth* v. *Ancrum, supra.* The officers' decision to stop the red car was appropriate in the circumstances.

b. *Exit order and patfrisk.* Because the officers acted with reasonable suspicion when they stopped the defendants' car, and the suspicion was based upon the report of a violent crime involving four armed persons, the officers were clearly authorized to conduct a threshold inquiry, to order the four suspects to exit the car, and to pat frisk them for weapons. See *Commonwealth* v. *Moses,* 408 Mass. 136, 141-142 (1990); *Commonwealth* v. *Bostock,* 450 Mass. 616, 619-623 (2008); *Commonwealth* v. *Ancrum, supra* at 655-656.

c. *Miranda issue.* The judge found as follows: "Officer Fitzgerald ordered Nunes to get out of the driver's seat and place her hands on the roof of the car. While waiting for a female officer to pat frisk Nunes, Fitzgerald told her, 'you better tell us if you have anything because we're going to find it.' Thus prompted by Officer Fitzgerald, Nunes admitted that she carried a gun in her waistband." In her motion, Nunes alleged a Miranda violation and argues, somewhat summarily in her brief, that the brief conversation with the officer was a custodial interrogation after she was ordered out of the car.[6] However, we are not persuaded that the officer acted unlawfully in these circumstances. His actions were sensitive, polite, and sensible, and he had lawful authority to immediately frisk her. She was one of four suspects in a violent home invasion, and moments earlier, a weapon had been retrieved from one of the passengers in the car she had been driving.

We assume, without deciding, that Nunes was in custody during this brief exchange. See *Commonwealth* v. *Kirwan,* 448 Mass. 304, 309 (2007). Contrast *Commonwealth* v. *Becla, ante* 142, 146 (2009). However, we do not agree that an interrogation, in the Miranda sense, took place. We do not read the officer's statement as the functional equivalent of express questioning. See *Commonwealth* v. *Clark,* 432 Mass. 1, 16 n.9 (2000).

---

[6]She does not argue, however, that the weapon retrieved from her waistband should be suppressed because of the alleged Miranda violation. Accordingly, without suggesting that any such argument has merit, we deem it waived.

It was a statement advising Nunes of a legal truth: she was going to be frisked, and she could elect to forgo that legal police action. Nor do we read the statement as "an invitation to 'relate a factual assertion or disclose information.' " *Commonwealth* v. *Haskell,* · 438 Mass. at 796, quoting from *Doe* v. *United States,* 487 U.S. 201, 210 (1988).

But even if the conversation did technically constitute a "custodial interrogation," given the officer's concern for his safety and that of the other officers and suspects, his legitimate concern for locating any hidden weapon, circumstances clearly justifying that concern, the authority he already possessed to immediately frisk, and the unreasonable jeopardy of awaiting the arrival of a female officer, we conclude that Officer Fitzgerald acted properly within the public safety exception to any Miranda requirement. See *New York* v. *Quarles,* 467 U.S. 649, 656-657 (1984); *Commonwealth* v. *Clark,* 432 Mass. at 13-14; *Commonwealth* v. *Dillon D.,* 448 Mass. 793, 796 (2007); *Commonwealth* v. *Alan A.,* 47 Mass. App. Ct. 271, 274-275 (1999); *Commonwealth* v. *Guthrie G.,* 66 Mass. App. Ct. 414, 416 (2006), S.C., 449 Mass. 1028 (2007). See also Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 18-3[f] (2008-2009 ed).

*Conclusion.* The order allowing the motions to suppress is reversed.

*So ordered.*