NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-887

COMMONWEALTH

vs.

LEIF L., a juvenile.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the juvenile was adjudicated delinquent by reason of unlawful possession of a firearm (G. L. c. 269, § 10 [a]), unlawful possession of ammunition (G. L. c. 269, § 10 [h] [1]); and unlawful possession of a weapon (here, a switchblade knife) prohibited by G. L. c. 269, § 10 (b).  On appeal, the juvenile argues that the loaded firearm, which the judge held was lawfully seized in plain view, should have been suppressed, because the incriminating nature of the firearm was not immediately apparent.  Because we agree that the seizure of the firearm was unlawful, we reverse the order denying the juvenile's motion to suppress the firearm, the ammunition, and

_____

[1] A pseudonym.

the switchblade discovered incident to his arrest, and we set aside all three adjudications of delinquency. Further, we accept the Commonwealth's concession that there was insufficient evidence the defendant knew the firearm was loaded, and we therefore order judgment for the juvenile on the ammunition charge. Finally, in light of the recent decision in Commonwealth vs. Canjura, 494 Mass. 508 (2024) (holding that statutory ban on possession of switchblade knives violates U.S. Constitution's Second Amendment), we order judgment for the juvenile on the switchblade charge.

Background. We summarize the judge's findings of fact, supplemented by testimony that the judge explicitly or implicitly credited. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015). On September 27, 2021, an anonymous 911 caller reported that he had seen a group of young males on the porch of a multi-unit Brockton residence and that he saw one of the males, who was wearing a white hoodie, "wave a gun around."[2] Brockton police officers Shannon O'Donnell and Wilson Alves responded to the address immediately and observed the juvenile

---

[2] The caller also reported that some of the males, including the juvenile, were wearing black ski masks. The dispatcher did not, however, relay this information to the officers on the scene, and they were unaware of it at the time the search and seizures took place. For this reason, the Commonwealth agreed at oral argument that the report of masks is not relevant to our analysis.

wearing a white hooded sweatshirt. Officer O'Donnell recognized one of the other individuals as someone she knew from a prior shooting investigation. Upon exiting the vehicle, the officers ordered the individuals to put their hands on their heads, and the officers began to pat frisk them.

At about this time, Detective Michael Bunker and another officer arrived on scene. Detective Bunker went onto the porch to "cover" Officer O'Donnell. While there, he observed "what looked to be like a firearm, the tail end of a firearm" protruding from a small cross-body bag located next to where the juvenile had been seated. He picked up the bag and noticed that its weight was consistent with the presence of a gun. Detective Bunker seized the bag, unzipped it fully, and removed a firearm, which turned out to contain one round of ammunition.

After discovering the firearm, the officers learned that the juvenile was a minor and therefore could not possess any firearms license, so they arrested him. Officer O'Donnell conducted another, more thorough search of the juvenile incident to his arrest and found a switchblade on his person.

The juvenile was charged with unlawful possession of a firearm, unlawful possession of ammunition, and unlawful possession of the switchblade. His motion to suppress the fruits of what he asserted were an unlawful search and seizure

3

was denied.  He was adjudicated delinquent on all three counts, and he now appeals.

Discussion.  1.  Suppression.  In reviewing a ruling on a motion to suppress, "we adopt the motion judge's factual findings absent clear error," but we "independently determine whether the judge correctly applied constitutional principles to the facts as found."  Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008).  Here, the Commonwealth's case depends most immediately on the validity of the firearm's "plain view" (or "plain feel") seizure.  It was only after that seizure that (1) the juvenile was asked if he had a license, (2) Officer O'Donnell learned that he was a juvenile and arrested him, and (3) a search incident to arrest led to the discovery of the switchblade.  For the following reasons, we conclude that the seizure was invalid and thus that the firearm and switchblade should have been suppressed.[3]

_____

[3] We reject the Commonwealth's suggestion that the motion to suppress could have been denied on the basis that the juvenile's supporting affidavit dated May 3, 2022, was not properly signed. The juvenile's electronic signature could have been lawfully affixed pursuant to the Supreme Judicial Court's Updated Order Authorizing Use of Electronic Signatures by Attorneys and Self-Represented Parties, issued June 10, 2020, ¶¶ 2-5.  See https://www.ma-appellatecourts.org/docket/OE144.  That order provides that if a party has a good faith basis to believe that an electronic signature was unauthorized, "a challenge may be raised promptly by way of motion," which the Commonwealth did not do here.  See id. ¶ 9.

4

A police officer may seize objects inadvertently discovered in plain view if the officer: (1) is lawfully in a position to view the object, (2) has a lawful right of access to the object, and (3) its incriminating character is immediately apparent. See Commonwealth v. D'Amour, 428 Mass. 725, 730-731 (1999). "[W]hether a thing plainly viewed or plainly felt may be constitutionally seized is to be measured by whether there is probable cause to believe in the incriminating character of the object." Commonwealth v. Cullen, 62 Mass. App. Ct. 390, 402 (2004), citing Minnesota v. Dickerson, 508 U.S. 366, 375 (1993) (plain feel), and Arizona v. Hicks, 480 U.S. 321, 326-327 (1987) (plain view).

The Supreme Judicial Court has previously held that "the incriminating character of [a] weapon . . . [is] immediately apparent and remain[s] so until such time as the officers ascertain[] whether the defendant had a license to carry a firearm." Commonwealth v. Johnson, 461 Mass. 44, 51 (2011). More recently, however, the court recognized "that a general prohibition against carrying a firearm outside the home is unconstitutional" in light of New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). Commonwealth v. Guardado, 491 Mass. 666, 690 (2023), S.C., 493 Mass. 1 (2023). "Accordingly, the absence of a license is necessary to render a

defendant's possession of a firearm" criminal activity. Guardado, supra. Therefore, the incriminating character of the firearm in this case was immediately apparent only if there was probable cause to believe that the juvenile was unlicensed.[4]

Here, at the time of the seizure, police had no such probable cause. First, although the juvenile was ultimately found to be too young to possess any firearm license under Massachusetts law, there is nothing in the record to support a finding that the officers recognized or could have recognized that the juvenile was a minor based on his appearance. Contrast Commonwealth v. Karen K., 491 Mass. 165, 179 (2023) (officer coming face to face with juvenile "could have observed that she likely was too young to be licensed to carry a firearm in the Commonwealth"). Indeed, the testimony was that police learned the juvenile's age and licensure status only after seizing the weapon and arresting the juvenile.

Second, the information provided by dispatch and corroborated by the officers on scene was inadequate to infer that the juvenile was unlicensed. The dispatch recordings and testimony from the officers confirm that police were informed only that a man in a white hoodie was seen waving a firearm at

---

[4] The Commonwealth does not argue that the firearm was seized as evidence of another crime known to police.

the address.  Officer Alves testified that he was not even sure what the caller meant when he reported a man "just waving the gun."  Once on scene, police testified that they observed the group "just sitting there talking," and that no one seemed angry or nervous or made any furtive gestures.

Nevertheless, the Commonwealth argues that police could reasonably believe that the suspect waving a firearm was unlicensed because a licensed gun owner would treat a firearm with more respect.  The cases cited by the Commonwealth in its brief do not adequately support this proposition.

In both Commonwealth v. Manha, 479 Mass. 44, 45 (2018), and Commonwealth v. Haskell, 438 Mass. 790, 794 (2003), the court agreed that reasonable suspicion existed to justify a stop and frisk of the defendants based on 911 reports that the defendants were handling firearms in a manner that either constituted a crime or suggested imminent criminal activity.  See Manha, supra (911 caller told police that suspect pointed firearm at her and threatened her); Haskell, supra ("the act of publicly loading a handgun is an event that creates a reasonable suspicion that a crime may be about to take place").  "Waving" a firearm, without more, does not rise to this level.  See Haskell, supra at 793 ("Because it is legal in Massachusetts to carry a handgun if properly licensed, a report that an individual possesses a

handgun, without any additional information suggesting criminal activity, does not create a reasonable suspicion that a crime is or will be committed").

The only case cited by the Commonwealth that recognizes a possible nexus between a person's handling of a weapon and the person's licensure status is Commonwealth v. Edwards, 476 Mass. 341, 346-347 (2017).  In Edwards, police received a 911 report that, among other suspicious behaviors, the suspect was openly holding a gun in his hand.  Id. at 346.  In assessing whether the officer had reasonable suspicion to justify an investigatory stop, the court considered the officer's testimony that, in his experience, "trained, licensed owners of a handgun typically carry their firearm in a holster."  Id.  Nevertheless, the court acknowledged that "a person licensed to carry a gun is not required to carry it holstered and concealed from view," and as such, this fact added only "marginally" to the reasonable suspicion calculus.  Id. at 346 n.10.  Ultimately, the court agreed that a combination of factors, including the suspect's handling of the firearm, "just barely" met the reasonable suspicion threshold.  Id. at 347.

Here, none of the officers testified about their experience with specific behaviors exhibited by licensed or unlicensed firearm owners or about how that experience might have

contributed to any belief that the juvenile was unlicensed. Even if police had testified that licensed owners rarely "waved" around a firearm, however, it would add only marginally to the analysis, where such behavior is not illegal in and of itself. Moreover, we are grappling here with the probable cause standard; if the facts in Edwards -- many of which were not present here -- "just barely" rose to the level of reasonable suspicion, then the facts known to police at the time of the seizure here cannot establish probable cause to believe that the firearm was illegally possessed.

In deciding that there was inadequate basis to seize the firearm in this case, we do not question whether police who spot a firearm in plain view under similar circumstances may make reasonable inquiry about the ownership of the firearm and the owner's licensure status. Nor do we suggest that officers, while making those inquiries, could not take reasonable steps, such as placing themselves between the persons and the firearm, to ensure that no one within reaching distance could quickly grab and use the gun. It might also be permissible to temporarily secure the firearm if there is a reasonable suspicion that its presence poses a risk to officer safety. But these are not facts and arguments with which we have been presented, and we do not decide those issues. Instead, here we

9

have a case where officers, armed with little more than the knowledge that the juvenile was seen in possession a firearm, seized a firearm without any articulable reason to suspect that the firearm was unlawfully possessed or used.

In sum, we conclude that the firearm was unlawfully seized and that the knife found on the juvenile incident to his arrest was the fruit of that unlawful seizure. Therefore, the motion to suppress the firearm, the ammunition contained in the firearm, and the switchblade should have been granted.

2. Sufficiency of evidence. The Commonwealth has correctly conceded that evidence of the juvenile's knowledge that the gun was loaded was insufficient, so that the adjudication for unlawful possession of ammunition cannot stand. See Commonwealth v. Brown, 479 Mass. 600, 601 (2018).

3. Second Amendment issue. The juvenile argues, as he did in the trial court, that the ban in G. L. c. 269, § 10 (b), on the possession of switchblade knives violates the U.S. Constitution's Second Amendment. The Supreme Judicial Court recently agreed with this argument and invalidated the ban. See Commonwealth vs. Canjura, 494 Mass. at 509. The adjudication on the switchblade charge thus cannot stand.

Conclusion. The order denying the juvenile's motion to suppress is reversed. The adjudications of delinquency are

10

vacated and the verdicts are set aside.  On the charges of delinquency by reason of unlawful possession of ammunition and unlawful possession of a weapon prohibited by G. L. c. 269, § 10 (b), judgment shall enter for the juvenile.

So ordered.

By the Court (Sacks,
  Ditkoff & Toone, JJ.[5]),

Clerk

Entered: October 4, 2024.

---

[5] The panelists are listed in order of seniority.