NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-302

COMMONWEALTH

vs.

MARQUS MITCHELL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial, a Superior Court jury convicted the defendant on six counts:  (1) possession of a large capacity firearm without a license in violation of G. L. c. 269, § 10 (m);[1] (2) possession of a large capacity feeding device, also in violation of G. L. c. 269, § 10 (m); (3) possession of ammunition without a firearm identification (FID) card in violation of G. L. c. 269, § 10 (h) (1); (4) reckless operation of a motor vehicle in violation of G. L. c. 90, § 24 (2) (a); (5) possession of cocaine in violation of G. L. c. 94C, § 34; and (6) resisting arrest in violation of G. L. c. 268, § 32B.

---

[1] Another count of firearm possession was dismissed as duplicative of the large capacity conviction.

The defendant appeals, arguing that his motion to suppress the evidence discovered from a search of his vehicle was erroneously denied and, further, that his motion to renew the motion to suppress to add a claim of racial profiling was erroneously denied. The defendant also argues that the evidence presented at trial was insufficient to sustain a conviction of possession of ammunition without an FID card. We see no error in the denial of both the motion to suppress and the motion to renew the motion to suppress. On the charge of possession of ammunition without an FID card, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant on that count. The remaining judgments are affirmed.

Discussion. 1. Motion to suppress. We summarize the facts as found by the motion judge, supplemented by the uncontested facts in the record that are consistent with his findings. Commonwealth v. Jones-Pannell, 472 Mass. 429, 430 (2015). "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error." Commonwealth v. Warren, 475 Mass. 530, 534 (2016), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004). Nevertheless, "[w]e review independently the application of constitutional principles to the facts found." Warren, supra, quoting Wilson, supra.

2

On May 30, 2017, Sergeant Daniel Lamoreaux of the Auburn police department, along with his partner, saw the defendant conducting a transaction with another person in a parking lot between a hotel and a restaurant. Lamoreaux noticed them standing by two vehicles with out-of-State license plates, which were parked along a tree line, near a dumpster, and away from the main business parking area. The defendant handed money to the other person in exchange for a black bag and shoes, nervously looked around the parking lot, and placed the bag in his vehicle. After twenty minutes, the other person left the parking lot, and the defendant moved his vehicle to the main parking lot of the restaurant with no other vehicles in close proximity. Lamoreaux saw the defendant scanning the parking lot every few seconds and moved his unmarked police vehicle behind the defendant's vehicle. He then approached the passenger's side, where the defendant's window was halfway down. Lamoreaux's partner walked up to the driver's side. Both officers were in uniform.

Upon approaching the defendant's vehicle, Lamoreaux saw the defendant holding a marijuana cigarette, which the defendant immediately dropped. Lamoreaux identified himself as a police officer and asked the defendant what he was doing. Lamoreaux had difficulty understanding the defendant's response, which led him to believe the defendant was under the influence of some

3

type of drug.  He noticed that, in the car, the defendant had two cell phones and ripped plastic baggies, which Lamoreaux believed were consistent with the packaging of illegal drugs. He also noted that the defendant was fidgeting excessively and was sweating despite the cool temperature outside.

The defendant told Lamoreaux that he had been given shoes and offered to show them to him.  When the defendant got out of his vehicle, Lamoreaux asked for his driver's license, which the defendant furnished.  Shortly thereafter, Lamoreaux asked to pat frisk the defendant and obtained his consent to do so. Lamoreaux discovered a plastic baggie on the defendant's person containing a cocaine-like substance.  He then searched the defendant's backpack and discovered a firearm with magazines. The defendant stated that he did not have a license to carry a firearm, and the officers attempted to place him under arrest. The defendant resisted the officers and managed to return to his car and drive away, commencing a high-speed chase before losing control of the vehicle, which then slid down an embankment.  He emerged from the vehicle carrying a firearm, at which time he was subdued.  Officers subsequently obtained a search warrant for the vehicle and discovered additional magazines and ammunition.

In evaluating the legality of the stop, we must determine, first, at what point the stop occurred and, second, whether the

officer had reasonable suspicion for the stop at that time. See Commonwealth v. Matta, 483 Mass. 357, 360 (2019). To determine whether a stop has occurred, we ask "whether, in the circumstances, a reasonable person would believe that an officer would compel him or her to stay." Id. at 363. That is, we evaluate "whether an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce that person to stay." Id. at 362. "To justify a police investigatory stop under the Fourth Amendment [to the United States Constitution] or art. 14 [of the Massachusetts Declaration of Rights], the police must have 'reasonable suspicion' that the person has committed, is committing, or is about to commit a crime." Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 8 (2023), quoting Commonwealth v. Costa, 448 Mass. 510, 514 (2007). "Reasonable suspicion 'must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience.'" Robinson-Van Rader, supra, quoting Commonwealth v. Gomes, 453 Mass. 506, 511 (2009). "A hunch will not suffice" (citation omitted). Commonwealth v. Barreto, 483 Mass. 716, 720 (2019).

The defendant argues that the stop began as soon as Lamoreaux began asking questions. We are unpersuaded. The facts in this case are comparable to those in Commonwealth v. Resende, 474 Mass. 455, 461 (2016), in which the Supreme

5

Judicial Court concluded that it was "not . . . a stop or seizure in the constitutional sense" when two officers drove up to the defendant, got out of their vehicle with their weapons visible, and asked the defendant for his name. Similarly, in Commonwealth v. Narcisse, 457 Mass. 1, 5-6 (2010), there was no stop when police got out of a vehicle and asked the defendant what he was doing in the vicinity.

Contrary to the defendant's contention, the police did not seize the defendant when they walked up to him and asked him what he was doing. "Not every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions that requires justification." Gomes, 453 Mass.at 510. However, once the police officers requested and obtained the defendant's license, he was seized. Commonwealth v. Lyles, 453 Mass. 811, 815 (2009). At that point, reasonable suspicion existed as the officers had seen a cash transaction for unknown items,[2] between two people driving vehicles with out-of-State license plates, in a remote section of a parking lot, while the defendant was scanning the area and acting nervously. Upon approaching the

---

[2] The defendant argues that the officers knew they had not witnessed a drug deal, but there is no indication in the record that they knew what was inside the black bag at the time they initiated their interaction with the defendant. The fact that Lamoreaux also saw that shoes were part of the exchange does not preclude the possibility that the bag contained contraband.

6

defendant, Lamoreaux also saw the defendant's nervousness, two cell phones, and ripped plastic bags, which were consistent with drug packaging in his experience.

Even if we decided that Lamoreaux's experience with drug paraphernalia was inadequately established to form a basis for reasonable suspicion alone, the totality of the circumstances supports a finding of reasonable suspicion. Although none of Lamoreaux's observations, standing alone, would likely have been adequate to establish reasonable suspicion, see, e.g., Commonwealth v. Cordero, 477 Mass. 237, 243 (2017) ("nervousness and evasiveness in the context of an involuntary police encounter cannot, without more, generate reasonable suspicion"), "'a combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief' that a person has, is, or will commit a particular crime." Commonwealth v. Karen K., 491 Mass. 165, 175 (2023), quoting Commonwealth v. Feyenord, 445 Mass. 72, 77 (2005), cert. denied, 546 U.S. 1187 (2006). This is not a situation where the officer added up "innocuous observations," i.e., "zeroes," to produce a sum of reasonable suspicion. Barreto, 483 Mass. at 723. The out-of-the-way location of the original meeting, the defendant's nervousness during the exchange of cash for unknown items, and, when the police approached him, the observations of a marijuana cigarette, multiple cell phones, and the torn

7

plastic bags consistent with drug packaging add up to more than a hunch. "That there may be innocent explanations for [these facts] does not remove [them] from consideration in the reasonable suspicion analysis." Commonwealth v. DePeiza, 449 Mass. 367, 373 (2007). The defendant was, accordingly, stopped lawfully, and his motion to suppress was properly denied.[3]

2. Renewed motion to suppress. The defendant also argues the judge erred in denying his motion to renew the motion to suppress pursuant to Mass. R. Crim P. 13 (a) (5), as appearing in 442 Mass. 1516 (2004), to permit him to argue under Commonwealth v. Long, 485 Mass. 711, 713 (2020), that the investigatory stop in this case was the result of impermissible racial profiling.[4] We review the denial of a motion to renew for abuse of discretion. See Commonwealth v. Lahey, 80 Mass. App. Ct. 606, 615 (2011), citing Commonwealth v. Haskell, 438 Mass. 790, 792-793 (2003). An abuse of discretion occurs only where a judge's decision "contains an error of law or where we conclude the judge made a clear error of judgment in weighing the factors

_____

[3] Because we find there was reasonable suspicion for the stop, we need not address whether the defendant's subsequent acts of resisting arrest and fleeing the scene constituted intervening criminal acts.

[4] The Commonwealth argues the defendant waived this issue by failing to raise it in his renewed motion to suppress. We assume without deciding that the argument is properly before us and address the merits of the defendant's argument.

8

relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). Commonwealth v. Jones, 481 Mass. 540, 558 (2019).

In denying the motion to renew, the judge determined that the defendant had failed to make an adequate showing of racial profiling based on the evidence at the motion hearing and in the motion to renew, and that substantial justice therefore did not require reconsideration of the motion to suppress. We cannot say this constituted an abuse of discretion. As a threshold matter, we note that Long changed the evidentiary standard for the issue of racial profiling in traffic stops, while this case, despite involving an automobile, resulted from a standard investigatory stop. See 485 Mass. at 723 ("We conclude that our past interpretations of a reasonable inference [of racial profiling] do not control in the context of traffic stops"). Although the Supreme Judicial Court has since expanded the new evidentiary standard to other police investigations, it had not done so at the time the judge ruled on the defendant's motion to renew. See Robinson-Van Rader, 492 Mass. at 18 ("We did not address [in Long] whether this standard was to extend to all claims of selective enforcement").

Even under the Long standard, however, the judge did not abuse his discretion in concluding that the defendant made an

inadequate showing to establish a "reasonable inference that a . . . stop was motivated by racial bias." Long, 485 Mass. at 723. In his renewed motion, the defendant argued that "because of the [defendant's] race the officers assumed that they had just witnessed a drug sale and did not accept his explanation that the transaction involved the sale of high-end sneakers." The only supports for the contention that the officers were motivated by racial bias were the fact that the defendant is Black, the defendant's representation that "the racial composition of the town of Auburn is overwhelmingly white," and that the officers disbelieved the defendant's "reasonable explanation" for the transaction they witnessed involving the transfer of the black bags and some shoes. Recognizing that the defendant was not required to present statistical evidence to raise an inference of discrimination, see id. at 722, and considering the limited evidence on which the defendant here relied in seeking renewal, we cannot say that it was outside the "range of reasonable alternatives," Jones, 481 Mass. at 558, for the judge to determine that these facts failed to establish a reasonable inference that this stop was motivated by racial bias. Long, supra at 723.

3. <u>Unlawful possession of ammunition</u>. The defendant argues that the Commonwealth failed to introduce sufficient evidence that he possessed ammunition without an FID card to

10

sustain a conviction under G. L. c. 269, § 10 (h) (1). We evaluate the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth." Commonwealth v. Watson, 487 Mass. 156, 162 (2021), quoting Commonwealth v. Ayala, 481 Mass. 46, 51 (2018).

When evaluating for sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See Latimore, 378 Mass. at 677-678. To convict the defendant of unlawful possession of ammunition under G. L. c. 269, § 10 (h) (1), the Commonwealth must establish that the defendant "(1) possessed (2) ammunition designed for use in any firearm, (3) without complying with the FID card requirements as provided by the applicable statute." Commonwealth v. McCollum, 79 Mass. App. Ct. 239, 245 (2011). The absence of an FID is an essential element of the crime of unlawful possession of ammunition, and the Commonwealth must accordingly prove beyond a reasonable doubt that a defendant was unlicensed to possess ammunition. Commonwealth v. Guardado, 491 Mass. 666, 692 (2023), S.C., 493 Mass. 1 (2023).

11

Lamoreaux testified that, after discovering ammunition in the defendant's vehicle, he asked the defendant for his license to carry (LTC) a firearm in Massachusetts, and the defendant responded that he did not have one.[5]  The Commonwealth did not offer any evidence about whether the defendant had an FID card, and on appeal, does not dispute whether "[an LTC] is distinct from an FID card."  Commonwealth v. Powell, 459 Mass. 572, 588 (2011).  The requirements are different, such that a person can -- and often will -- legally obtain an FID card without obtaining an LTC.  See G. L. c. 140, §§ 129B, 131.

Although a jury may draw reasonable inferences in favor of the Commonwealth, and evidence may be direct or circumstantial, see Watson, 487 Mass. at 162, "[a] conviction cannot stand . . . if it is based entirely on conjecture or speculation."  Ayala, 481 Mass. at 51.  As we held in Commonwealth v. Encarnacion, 105 Mass. App. Ct. 46, 55 (2024), testimony that a defendant admitted to not having a LTC is insufficient to establish that a defendant lacked an FID card.  Accordingly, the evidence was insufficient to sustain a conviction of unlawful possession of ammunition under G. L. c. 269, § 10 (h) (1).

Conclusion.  For the above reasons, there was no error in the denial of the defendant's motion to suppress and the motion

---

[5] On cross-examination, Lamoreaux repeated that he demanded the defendant's LTC and that the defendant did not produce one.

to renew the motion to suppress.  On the charge of unlawful possession of ammunition under G. L. c. 269, § 10 (h) (1), the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant on that count.  The judgments are otherwise affirmed.

So ordered.

By the Court (Ditkoff, Hand & Walsh, JJ.[6]),

Clerk

Entered:  May 27, 2025.

---

[6] The panelists are listed in order of seniority.